UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

OCEANEERING INTERNATIONAL, INC., §
§
      Plaintiff, §
§
                                            §     CIVIL ACTION NO. H-11-3447
v. §
§
CROSS LOGISTICS, INC., NATIONAL §
UNION FIRE INSURANCE COMPANY §
OF PITTSBURGH, PA, HOUSTON §
CASUALTY COMPANY, NATIONAL §
LIABILITY & FIRE INSURANCE §
COMPANY, NORTHERN ASSURANCE §
COMPANY, MARKEL INSURANCE §
COMPANY, ZURICH AMERICAN §
INSURANCE COMPANY, and §
NAVIGATORS INSURANCE COMPANY. §
§
      Defendants. §

### MEMORANDUM AND ORDER

Pending is Cross Logistics, Inc.'s Motion for Summary Judgment (Document No. 33). After carefully considering the motion, response, reply, sur-reply, and applicable law, the Court concludes for the reasons that follow that the motion should be denied.

Oceaneering International, Inc. ("Oceaneering") seeks recovery from Cross Logistics, Inc. ("Cross") of money it paid to replace a subsea umbilical that allegedly was damaged by Cross's barge, the CROSSMAR 14.[1] Oceaneering had an Offshore Master Service Contract (the "Main Contract")[2] and a Purchase Order[3] with Mariner Energy,

---

[1] Document No. 1 (Orig. Cmplt.).

[2] Document No. 34, ex. A.

[3] Document No. 34, ex. B.

Inc. ("Mariner") to perform work for Mariner in the Garden Banks area, offshore Louisiana.[4] Oceaneering and Cross entered a "Back to Back" Subcontract Agreement (the "Back-to-Back"), pursuant to which Cross was to provide vessel, equipment, and personnel in support of Oceaneering's work for Mariner. Cross was performing that work at the time of the incident. The umbilical was later determined to belong to Enterprise Field Services LLC ("Enterprise").[5] Enterprise replaced the umbilical, at a cost of $4,679,639.88.[6] Enterprise made a demand upon Mariner for reimbursement of the replacement cost; Mariner then sought indemnification from Oceaneering; Oceaneering sought indemnification from Cross.[7] Oceaneering, Mariner, and Enterprise entered into an agreement wherein Oceaneering paid the $4,679,639.88 demanded by Enterprise, and Mariner and Enterprise agreed to release Oceaneering from any further obligation for the umbilical and to assign to Oceaneering any rights that Mariner and Enterprise had regarding the replacement of the umbilical.[8] Oceaneering brings this suit against Cross, alleging claims of negligence,

---

[4] Document No. 34, ex. C at 49.

[5] Id., ex. G.

[6] Id., ex. G.

[7] Id., exs. D-G.

[8] Document No. 34, ex. H.

2

contractual indemnity, and breach of contract.[9] Cross counter-claimed, alleging breach of contract for failure to indemnify.[10] Cross moves for summary judgment on all of Oceaneering's claims.

Cross agrees that "[t]he facts regarding whether and to what extent Cross did, or even could have, damaged a working umbilical (as opposed to catching an umbilical that already was severed and damaged on January 9, 2009) are very much in dispute."[11] Cross contends, however, that these fact issues are irrelevant because the assignment of rights from Enterprise and Mariner to Oceaneering was invalid under a line of Fifth Circuit cases applying the proportionate liability rule established in McDermott, Inc. v. AmClyde, 114 S. Ct. 1461 (1994). These cases hold that a settling tortfeasor cannot recover contribution from a non-settling tortfeasor, unless the settling tortfeasor pays more than he owes to the injured party and obtains a full release for all parties for the tortious act. Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC, 615 F.3d 599, 603 (5th Cir. 2010); Lexington Ins. Co. v. S.H.R.M. Catering Servs., Inc., 567 F.3d 182, 186 (5th Cir. 2009); Ondimar Transportes Maritimos v. Beatty St. Props., Inc., 555 F.3d 184, 187 (5th Cir. 2009).

---

[9] Document No. 1.

[10] Document No. 22.

[11] Document No. 33 at 2.

Cross has not shown as a matter of law that Oceaneering, the settling party, was in fact a tortfeasor, especially given the absence of any evidence showing that Oceaneering had any involvement in the accident. Oceaneering's summary judgment evidence is that it was contractually bound by the Purchase Order from Mariner to indemnify Mariner for property damage "arising out of acts or omissions to act" of its contractors without limitation on whether the acts or omissions were tortious. Cross cites no case law applying McDermott and its progeny to a situation in which a party--not shown to be a co-tortfeasor--satisfies its contractual obligation to pay for damages and seeks recovery from the alleged tortfeasor based on subrogation and/or assignment; and cites no authority for the proposition that the assignment of a property damage tort--outside of "the context of *McDermott's* proportionate fault network," Ondimar, 555 F.3d at 188--is invalid. See id., at 187 ("It is unnecessary for us to determine whether the assignment of property damage tort claims are generally prohibited, although our research suggests that most state courts which have considered the question permit such assignments.") (citing cases). Accordingly, Cross's motion is denied as to Oceaneering's negligence claim.

Cross also moves for summary judgment that Oceaneering is not entitled to indemnification from Cross for claims made by third parties, in this instance, Mariner. "When interpreting maritime

4

contracts, federal admiralty law rather than state law applies." Int'l Marine, L.L.C. v. Delta Towing, L.L.C., 704 F.3d 350, 354 (5th Cir. 2013) (citation omitted). "A maritime contract containing an indemnity agreement should be read as a whole and its words given their plain meaning unless the provision is ambiguous." Breaux v. Halliburton Energy Servs., 562 F.3d 358, 364 (5th Cir. 2009) (quotation marks and ellipses omitted). See also Chembulk Trading LLC v. Chemex Ltd., 393 F.3d 550, 555 (5th Cir. 2004) ("A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous.") (citations omitted).

The Back-to-Back mutually confers upon Oceaneering and Cross all of the corresponding rights, obligations, and liabilities that Mariner and Oceaneeering have with respect to each other in the Main Contract. Cross and Oceaneering agree that the Back-to-Back incorporates both the Main Contract and the Purchase Order between Oceaneering and Mariner.[12] Cross contends, however, that paragraph three of the Back-to-Back limits Cross's contractual indemnity obligations to only the reciprocal indemnification obligations described therein, while Oceaneering contends that paragraph two

---

[12] Document No. 22 at 4 (Cross Counterclaim) ("By its terms, the Back to Back Agreement incorporates the Main Contract *and the Purchase Order*.") (emphasis added); Document No. 37 at 3; Document No. 34 at 21.

5

obligates Cross to indemnify Oceaneering in the same way that Oceaneering is obligated to indemnify Mariner under the Purchase Order. The Back-to-Back states that:

1. Owner [Cross] will act as a subcontractor to Charterer [Oceaneering] in accordance with the relevant terms and conditions of the Main Contract (as contained within Appendix A hereto) on a "back to back" principle.

2. "Back to Back" shall mean that the Charterer and Owner shall have the same rights, obligations, liabilities and limitations with respect to each other as Company [Mariner] and Contractor [Oceaneering] have to each other under the Main Contract, including any amendments thereto, applied Mutatis Mutandis with the substitutions of "Charterer" for "Company," "Owner" for "Contractor."

3. FOR THE AVOIDANCE OF DOUBT, CHARTERER SHALL EXTEND TO OWNER THE BENEFITS OF INDEMNITIES AND HOLD HARMLESS PROVIDED BY COMPANY UNDER THE MAIN CONTRACT AND EACH PARTY HERETO SHALL INDEMNIFY AND HOLD THE OTHER HARMLESS (TO INCLUDE PARENT OF OR SUBSIDIARY COMPANIES, SUBCONTRACTORS OF ANY TIER AND THEIR RESPECTIVE EMPLOYEES AND FROM AND AGAINST LIABILITY FOR INJURY TO, OR DEATH OF THEIR PERSPECTIVE [sic] PERSONNEL AND FOR LOSS OF, OR DAMAGE TO THEIR RESPECTIVE PROPERTY TO INCLUDE ALL CLAIMS, DEMANDS, PROCEEDINGS AND CAUSES OF ACTION RELATING THERETO, ARISING OUT OF, OR IN CONSEQUENCE OF, THE PERFORMANCE OF THE WORK REGARDLESS OF WHETHER CAUSED OR CONTRIBUTED TO IN WHOLE OR IN PART, BY THE SOLE OR CONCURRENT NEGLIGENCE, STRICT LIABILITY OR FAULT OF EITHER PARTY.[13]

Cross contends that paragraph three would be rendered meaningless if the Back-to-Back were interpreted to obligate Cross to indemnify Oceaneering for a situation not included in the language of

---

[13] Document No. 34, ex. C. (emphasis in original).

paragraph three. However, paragraph three, which begins with "for the avoidance of doubt," may well be construed not as limiting liability but as clarifying language only with respect to the reciprocal indemnity obligations, which clarification may have been considered necessary given that the reciprocal indemnity obligations subjects each party to possible liability for the other party's negligent acts. *See* <u>Corbitt v. Diamond M. Drilling Co.</u>, 654 F.2d 329, 333 (1981) ("[I]t is widely held that a contract of indemnity will not afford protection to an indemnitee against the consequences of his own negligent act unless the contract clearly expresses such an obligation in unequivocal terms."). Accordingly, Cross has not shown itself entitled to summary judgment on the contractual indemnity claim.

Further, genuine issues of material fact remain on Oceaneering's breach of contract claim, which precludes summary judgment from Cross on that claim.

For the foregoing reasons, it is

ORDERED that Cross Logistics, Inc.'s Motion for Summary Judgment (Document No. 33) is DENIED.

The Clerk will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this 25TH day of June, 2013.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE